1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MIKE YELLEN,

11            Plaintiff,                    No. CIV S-94-1298 GEB DAD P

12        vs.

13   ANA M. OLIVAREZ, et al.,

14            Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a former state prisoner proceeding pro se with a civil rights action

17   pursuant to 42 U.S.C. § 1983.  Plaintiff claims that his rights under the Eighth Amendment were

18   violated during his incarceration at Deuel Vocational Institution (DVI) through exposure to

19   contaminated water that was both unsafe to drink and unsanitary for bathing, cooking and

20   maintaining oral hygiene.  Specifically, plaintiff alleges that the water at DVI was unfit for

21   human consumption, that the DVI plumbing is archaic, that DVI employees had been instructed

22   not to drink the water, and that the faucet water in his cell looked like mud and had a putrid odor.

23   Plaintiff claims that the water caused him to vomit, and that he is subject to future health risks

24   due to the contaminated water.  This matter is before the court on defendants' motions for

25   summary judgment.

26   /////

1

PROCEDURAL HISTORY

This action has an unfortunately lengthy procedural history before the court with delays and long periods of inaction. Plaintiff filed his original complaint on August 17, 1994. Prior to the time this action was filed, another case raising the same claims was filed on May 17, 1994, Arreaga v. Olivarez, Case No. 2:94-cv-0761 GEB GGH P (Arreaga). Between June 1994 and December 1994, this action and sixteen other cases were related to Arreaga,[1] which was designated as the lead case. By order filed February 10, 1995, all related cases were stayed and administratively closed, with the exception of the lead case. By order filed March 6, 1995, the instant action was designated as the lead case and reopened, and the Arreaga case was also stayed and administratively closed.[2]

On April 20, 1995, the court dismissed plaintiff Yellen's complaint and granted him leave to file an amended complaint. This action is proceeding on that amended complaint, filed May 12, 1995.[3] By order filed July 7, 1995, the court determined that service was

---

[1] Case Nos. 2:94-cv-01096-GEB-GGH; 2:94-cv-01105-GEB-GGH; 2:94-cv-01269-GEB-GGH; 2:94-cv-01018-GEB-GGH; 2:94-cv-01028-GEB-GGH; 2:94-cv-01052-GEB-GGH; 2:94-cv-01630-GEB-GGH; 2:94-cv-01010-GEB-GGH; 2:94-cv-01095-GEB-GGH; 2:94-cv-00840-GEB-GGH; 2:94-cv-00866-GEB-GGH; 2:94-cv-00881-LKK-GGH; 2:94-cv-00882-LKK-GGH; 2:94-cv-00890-GEB-GGH; 2:94-cv-00778-GEB-GGH; 2:94-cv-01410-GEB-GGH. Two of those cases, 2:94-cv-0881-LKK-GGH and 2:94-cv-0882-LKK-GGH were dismissed in January 2003 and January 2004.

[2] Subsequently, three additional cases were stayed and administratively closed pending resolution of this action. See Case No. 2:95-cv-1250 GEB GGH, Orders filed July 24, 1995 and November 27, 1995; Case No. 2:96-cv-1416 FCD DAD, Orders filed February 20, 1997 and August 11, 1997; and Case No. 2:98-cv-1293 GEB DAD, Order filed January 12, 1999.

[3] Although plaintiff purports to raise the allegations of the amended complaint "on behalf of all other person [sic] similarly situated [and] housed at the Deuel Vocational Institution," (Doc. No. 14) this case has never been certified as a class action, nor could it be. Plaintiff is a non-lawyer proceeding without counsel. It is well established that a layperson cannot ordinarily represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). In direct terms, plaintiff cannot "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976).

appropriate upon seven of the named defendants.  At all times relevant to the allegations of the

amended complaint, five of those defendants were employed by the California Department of

Corrections (now known as the California Department of Corrections and Rehabilitation):  A.M.

Olivarez, then Warden of DVI; J. Gomez, then Director of the California Department of

Corrections; J.J. Pacheco, Chief of Plant Operations at DVI;  Loran Reeves, Plant Engineer at

DVI; and Shirley Stiles, then associate warden at DVI (hereafter Corrections defendants).  One

defendant, Joseph Spano, at all times relevant to this action was employed by the California

Department of Health Services.  The seventh defendant is the San Joaquin County Public Health

Services (hereafter County Public Health).[4]

The Corrections defendants filed their answer on October 6, 1995.  The County

Public Health defendant filed its answer on February 9, 1996.  Defendant Spano filed his answer

on October 10, 1996, following denial of his motion to dismiss.

By order filed October 11, 1996, the court set a final deadline of February 18,

1997 for completion of discovery, and a deadline of April 24, 1997 for the filing of dispositive

motions.  On April 24, 1997, defendants filed motions for summary judgment.

By order filed March 6, 1998, this court appointed Anthony Saracino, then of Geo

Scientific Consulting, as the court's expert technical advisor.[5]  See Fed. R. Evid. 706.[6]

---

[4]  By order filed September 15, 1995, the California Department of Health Services, Division of Drinking Water and Environmental Management was dismissed as a defendant based on Eleventh Amendment immunity.  See Order filed September 15, 1995 (Doc. No. 26) (adopting findings and recommendations filed July 7, 1995 (Doc. No. 17)).

[5]  Mr. Saracino now manages the California Water Program for The Nature Conservancy. See http://www.watereducation.org/doc.asp?id=786.

[6]  The court appointment of an expert is particularly appropriate in a case such as this involving a vast amount of technical data as well as expert interpretation.  See In re Joint Eastern and Southern Districts Asbestos Litigation, 151 F.R.D. 540, 545 (E.D. & S.D.N.Y. 1993); see also McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir.), vacated on other grounds, 502 U.S. 903 (1991) (holding that it was within the district court's discretion to appoint an expert to provide the court scientific information regarding the levels of environmental tobacco smoke in a prison and the potential health effects upon prisoners.); Gilman v. Brown, No. Civ. S-05-830

1    Specifically, Mr. Saracino was appointed by the court

2              to review the reports, declarations, technical data and water
3              samples submitted by the parties in connection with the
              defendants' motions for summary judgment.  He will be asked to
4              prepare a report for the court, which will be provided to the parties,
              assessing that material with respect to the issue of water quality at
5              DVI and any effect that water could be expected to have upon
              persons using it on a daily basis.

6    Order filed March 6, 1998 (Doc. No. 237), at 11.  Defendants' April 24, 1997 motions for

7    summary judgment were dropped from calendar pending receipt of Mr. Saracino's report, and

8    deemed  renewed and resubmitted when Mr. Saracino completed his report.  Id.  On February

9    11, 2002, Mr. Saracino submitted his final report to the court.

10          On April 11, 2005, this court issued an order directing plaintiff to notify the court

11   within fifteen days whether he intended to proceed with the action.  Order filed April 11, 2005, at

12   2.  The court's order was predicated on plaintiff's release from prison on parole.  Id. at 1.  The

13   April 11, 2005 order was returned undelivered[7], and on April 27, 2005, the court issued findings

14   and recommendations recommending dismissal of the action due to plaintiff's failure to notify

15   the court of his current address as required.  On May 18, 2005, plaintiff filed objections to those

16   findings and recommendations and a notice of change of address.  By order filed May 27, 2005,

17   the April 27, 2005 findings and recommendations were vacated.

18          On January 19, 2007, plaintiff filed a motion to reopen discovery.  On December

19   20, 2010, this court issued an order and findings and recommendations denying plaintiff's motion

20   to reopen discovery and recommending that plaintiff's request for injunctive relief be dismissed

21   as moot due to plaintiff's release from incarceration.  On January 10, 2011, the court issued an

22
     LKK GGH, 2011 WL 3875711, at *1-2 (E.D. Cal. Aug. 31, 2011) (court appointment of a
23   neutral statistical expert) .  The appointment of such an expert to assist the court in evaluating
     technical material submitted in connection with a summary judgment motion is appropriate.  See
24   Mediger v. Liquid Air Corp., 926 F. Supp. 152, 154 (D. Or. 1995).

25         [7] As set forth herein, several subsequent orders and findings and recommendations
     served by the court upon plaintiff were also returned undelivered.  All were returned by the postal
26   service because they were undeliverable to plaintiff at the address of record.

1   order directing plaintiff to inform the court within ten days whether he intended to prosecute the

2   action further.  On the same day, the copy of the December 20, 2010 order and findings and

3   recommendations served on plaintiff were returned undelivered.  On January 18, 2011, the

4   district court adopted the December 20, 2010 findings and recommendations in full and

5   dismissed plaintiff's request for injunctive relief.

6           On January 20, 2011, the copy of the January 10, 2011 order served on plaintiff

7   was also returned undelivered.  On January 26, 2011, the court issued findings and

8   recommendations recommending dismissal of the action due to plaintiff's lack of prosecution

9   and for failure to respond to a court order.  On January 28, 2011 and February 3, 2011,

10  respectively, the copies of the January 18, 2011 order and the January 26, 2011 findings and

11  recommendations served on plaintiff were returned undelivered.  On March 1, 2011, the district

12  court adopted the January 26, 2011 findings and recommendations in full and dismissed the

13  action.  Judgment was entered on the same day.  The copies of that order dismissing the action

14  and judgment served on plaintiff were returned undelivered on March 7, 2011.

15          On March 21, 2011, plaintiff filed yet another notice of change of address.  On

16  March 25, 2011, the order dismissing the action and judgment thereon were reserved on plaintiff.

17  On April 7, 2011, plaintiff filed a motion for reconsideration of the dismissal of the action.

18  Defendants opposed the motion.  On June 10, 2011, the matter was taken under submission

19  following an in court hearing and a chambers conference for consideration of a possible

20  settlement of the action.  Following the request of the parties, the final report of the court

21  appointed expert Mr. Saracino, dated February 11, 2002, was filed in the court file that same day.

22          On October 27, 2011, counsel for the Corrections defendants filed with the court a

23  letter that was sent to plaintiff on October 20, 2011, advising plaintiff that the Corrections

24  defendants were declining to engage in further settlement negotiations.  On December 14, 2011,

25  this court issued findings and recommendations recommending that plaintiff's motion for

26  reconsideration of the court's order dismissing the action due to plaintiff's lack of prosecution

1   and for failure to respond to court orders be granted and that the March 1, 2011 order and

2   judgment thereon be vacated.  On January 19, 2012, the assigned District Judge adopted those

3   findings and recommendations in full and referred the matter back to the undersigned for further

4   proceedings.  On January 20, 2012, this court issued and order directing defendants to file

5   renewed motions for summary judgment within thirty days.

6          On February 1, 2012, plaintiff filed a motion to reopen discovery and notice that

7   he would be unavailable for the month of February 2012.  By order filed February 15, 2012, this

8   court denied plaintiff's motion to reopen discovery and extended the time for defendants to file

9   their motions for summary judgment to February 29, 2012.  Defendants filed their motions on

10  that day, noticing them for hearing on April 27, 2012  On April 2, 2012, plaintiff filed a motion

11  for a thirty day extension of time to file opposition to the motions.  By order filed April 12, 2012,

12  plaintiff's motion was denied, plaintiff was granted a shorter extension of time than requested

13  and was directed to file any opposition on or before April 20, 2012, and hearing on the motions

14  was continued to May 11, 2012.

15         Plaintiff did not timely file an opposition to any motion for summary judgment,

16  and by order filed April 30, 2012, plaintiff was directed to show cause in writing why the

17  motions should not be granted.  Plaintiff did not respond to the order to show cause.  For that

18  reason, on May 9, 2012, the court issued an order and findings and recommendations vacating

19  the May 11, 2012 hearing and again recommending dismissal of the action pursuant to Federal

20  Rule of Civil Procedure 41(b).

21         On May 17, 2012, plaintiff filed a motion for a leave to file a late opposition to

22  summary judgment and a proposed opposition to defendants' motions for summary judgment.

23  On May 29, 2012, plaintiff filed a motion for extension of time to file objections to the May 9,

24  2012 findings and recommendations, and on June 25, 2012, plaintiff filed objections to the May

25  9, 2012 findings and recommendations.  Plaintiff's objections are predicated on his recent move

26  to Hawaii.

1    After review of the record, and good cause appearing, plaintiff's motion for leave

2    to file a late opposition will be granted, as will plaintiff's motion for extension of time to file

3    objections to the May 9, 2012 findings and recommendations.  The May 9, 2012 findings and

4    recommendations will be vacated and the court will now issue new findings and

5    recommendations for final disposition of this action.

6    The court's review of plaintiff's May 17, 2012 opposition (Doc. No. 292) to the

7    motions for summary judgment reflects that plaintiff has not made arguments in opposition to the

8    County Public Health defendant's motion for summary judgment (Doc. No. 282).  The court

9    finds that the County Public Health defendant has met its burden of proving that it had no

10   authority to "monitor, inspect, or regulate the public water at DVI", <u>see</u> Memorandum of Points

11   and Authorities in Support of Renewed Motion for Summary Judgment, filed February 29, 2012

12   (Doc. No. 282), at 6, and that defendant San Joaquin County Public Health is therefore entitled to

13   summary judgment in its favor as to all claims.[8]  The court now turns to the motions of defendant

14   Spano and the Corrections defendants for summary judgment.[9]

15                         MOTIONS FOR SUMMARY JUDGMENT

16   I.  <u>Summary Judgment Standards under Rule 56</u>

17   Summary judgment is appropriate when it is demonstrated that there exists no

18   genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter

19

20       [8]  Given plaintiff's failure to oppose the motion for summary judgment filed on behalf of
defendant County Public Health, plaintiff's claims against said defendant could, for the reasons
set forth in the May 9, 2012 findings and recommendations (Doc. No. 291), be dismissed

21   pursuant to Federal Rule of Civil Procedure 41(b).

22       [9]  Given the lengthy procedural history of this action set forth above, the court would be
inclined to find that plaintiff has not shown excusable neglect for his delay in filing any

23   opposition to the summary judgment motion until almost one month after the extended deadline
set in the court's April 12, 2012 order (Doc. No. 289), <u>see</u> Fed. R. Civ. P. 6(b)(1)(B), and to let

24   stand the recommendation that all of plaintiff's claims be dismissed pursuant to Federal Rule of
Civil Procedure 41(b).  However, given the strong policy favoring disposition of cases on their

25   merits and the fact that the merits are now finally joined, the court will issue these findings and
recommendations addressing the two pending motions for summary judgment to which plaintiff

26   has tendered opposition.

of law.  Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

Owens v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

The party moving for summary judgment

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

file.'"  Id.  Indeed, summary judgment should be entered, "after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial." Id. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l

Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles,

607 F.2d 1276, 1280 (9th Cir. 1979).

In attempting to establish the existence of this factual dispute, the opposing party

may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts

in the form of affidavits, and/or admissible discovery material, in support of its contention that

the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see</u> <u>also</u> <u>First Nat'l Bank</u>, 391

U.S. at 288-89; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987).

   In seeking to establish the existence of a factual dispute, the opposing party need

not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 289.  <u>See also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting

Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 Amendment).  <u>See also</u> <u>Int'l Union of</u>

<u>Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405

(9th Cir. 1985).

   In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Rule 56(c); <u>see also</u> <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The

evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable

inferences that may be drawn from the facts placed before the court must be drawn in favor of the

opposing party, <u>Matsushita</u>, 475 U.S. at 587-88 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S.

654, 655 (1962)); <u>see also</u> <u>United States v. First Nat'l Bank of Circle</u>, 652 F.2d 882, 887 (9th Cir.

1981).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards</u>

<u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902

1 (9th Cir. 1987).  Moreover, a scintilla of evidence or evidence that is merely colorable or not

2 significantly probative does not present a genuine issue of material fact precluding summary

3 judgment.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); Summers v. A.

4 Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

5 　　　　　　Finally, to demonstrate a genuine issue, the opposing party "must do more than

6 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

7 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

8 no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

9 II.  Defendants' Motions for Summary Judgment

10 　　　　　　Plaintiff's amended complaint raises two separate claims with respect to the water

11 at DVI.  First, plaintiff claims that the water was so contaminated that ingesting it posed a

12 substantial health risk.  Second, plaintiff claims that the water was "unsanitary," "foul" and

13 "putrid" and caused him to vomit.

14 　　　　　　The Eighth Amendment to the United States Constitution prohibits cruel and

15 unusual punishments.  Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Ingraham v. Wright,

16 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor

17 negligence constitutes cruel and unusual punishment, however, for "[i]t is obduracy and

18 wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by

19 the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

20 　　　　　　An inmate's safety and health are conditions of confinement subject to the

21 strictures of the Eighth Amendment.  Wilson v. Seiter, 501 U.S. 294, 303 (1991).  To state an

22 Eighth Amendment claim, an inmate must allege facts that satisfy a two-part test.  First, the

23 inmate must allege facts showing that objectively he suffered a sufficiently serious deprivation of

24 the right not to be subjected to cruel and unusual punishment.  Id. at 298.  Second, the inmate

25 must allege facts showing that subjectively each defendant had a culpable state of mind in

26 allowing the inmate's deprivation of rights to occur.  Id. at 299.  It is insufficient to allege facts

1  showing mere negligence on the part of a prison official; the allegations must show that each

2  official acted with deliberate indifference.  Id.  There is deliberate indifference where "the

3  official knows of and disregards an excessive risk to inmate health or safety."  Farmer v.

4  Brennan, 511 U.S. 825, 837 (1994).  "[T]he official must both be aware of facts from which the

5  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

6  inference."  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or

7  safety may be found free from liability if they responded reasonably to the risk, even if the harm

8  ultimately was not averted."  Id. at 844.

9            The Corrections defendants present three arguments in support of their motion for

10  summary judgment.  First, they argue that there are no allegations of their personal involvement

11  in any alleged violation of plaintiff's Eighth Amendment rights.  Second, they contend that

12  plaintiff has not suffered an Eighth Amendment violation because the water at DVI was safe for

13  human consumption, and plaintiff has presented no evidence that the water quality caused a

14  sufficiently serious deprivation nor that any defendant acted with deliberate indifference to the

15  water quality.   Finally, the Corrections defendants contend they are entitled to qualified

16  immunity.

17            Defendant Spano seeks summary judgment on several grounds.  He argues that he

18  had no duty to plaintiff under the Eighth Amendment because he was employed by the California

19  Department of Health Services and had only a duty to monitor water quality at DVI but no

20  control over the prison or the conditions therein.  Defendant Spano also contends that the expert

21  report shows that the water at DVI met drinking standards, that plaintiff had access to drinking

22  water, and that there is no evidence that he was deliberately indifferent, nor any causal

23  connection between he and any alleged constitutional deprivation.  Defendant Spano contends

24  that plaintiff cannot establish liability on his part on the basis of California' Safe Drinking Water

25  Act.  Finally, defendant Spano also argues that he is entitled to qualified immunity.

26  /////

In opposition to the motions, plaintiff contends that (1) he has produced sufficient evidence of the water quality at DVI to create a triable issue of fact as to whether it caused a "sufficiently serious deprivation"; (2) deliberate indifference is shown by the fact that, as defendants informed plaintiff in their October 20, 2011 letter, "construction was recently completed on a $36,000,000 waster water treatment plant, and a reverse osmosis water treatment plant to treat ground water at DVI for the removal of substances that affect the aesthetic quality of the water;" and (3) defendants are not entitled to qualified immunity.[10]

As noted above, the court's expert technical advisor has reviewed numerous documents filed in this action, including the exhibits tendered by the parties, to assist the court in assessing that material with respect to the issue of water quality at DVI and any effect that water could be expected to have upon persons using it on a daily basis. The court's own expert reached the following conclusions with respect to the water conditions complained of by plaintiff:

> The potable water at DVI is supplied by groundwater from four wells producing about 325 million gallons per year. Two of the wells are used as standby wells – one providing water during high water use months and the other when a well is down for repair. The water is pumped from the wells to a central location where it is chlorinated as it enters a steel storage tank. The water then enters the distribution system for use by approximately 3400 inmates and 1000 staff.

> The water at DVI is generally of poor quality with respect to certain secondary standards that govern taste and odor, based on a review of previous water quality studies by [the California Department of Water Resources] and the test results provided. Given its relatively high [Total Dissolved Solids], iron and manganese content, the water at DVI is likely to taste bad and occasionally appear cloudy or "dirty," especially when the distribution system is flushed to help remove accumulated minerals. While these substances cause an unpleasant taste and appearance to the water at DVI, there is no evidence that they pose a significant health threat to the average person based on the concentrations indicated.

---

[10] Plaintiff also contends that he should be permitted to conduct additional discovery to gather evidence about why the new water treatment plant was built. The time for discovery in this dated action closed over a decade ago.

> The detection of coliform in May 1996 appears to have been due to poor sampling procedures.  Given the chlorine residue in the distribution system and the most recent test results reviewed, it is unlikely that coliform presents a health threat at DVI.  Similarly, the other contaminants detected at DVI, such as DEHP, radionuclines and arsenic, appear to be either anomalous (attributable to sampling or laboratory error) or present at concentrations and frequencies that are unlikely to pose a significant health threat to the average person.

Saracino Report, dated February 11, 2002 (Doc. No. 271), at 14.  The factual basis for these conclusions is drawn entirely from the evidence in the record and set forth in preceding sections of the expert's report.

In his first claim plaintiff asserts that the drinking water at DVI was contaminated, thereby exposing him to a substantial risk of harm.  In order to prevail on this Eighth Amendment claim, plaintiff must show that he was being exposed to unreasonably high levels of the allegedly toxic substance, that scientific and statistical evidence establishes that such exposure will cause injury to the inmate's health, and that the risk of harm is so grave that it "violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993) (involving prisoner's Eighth Amendment claim that he faces possible future harm from exposure to environmental tobacco smoke).  Here, plaintiff has failed to come forward with any evidence that could satisfy this objective test.  The court's expert has reviewed the concentration levels of at least eighteen different substances in the water at DVI during the relevant time period.  The expert's review was based on test results of several water samples which were taken in compliance with state and federal regulations.  Mr. Saracino concluded that the concentration levels of the substances in the water at DVI did not pose a significant health threat to the average person.  (Saracino Report (Doc. No. 271), at 14.) Although there were some instances where primary MCLs were exceeded for coliform, DEHP, radionuclides and arsenic, Mr. Saracino concluded that this was due either to sampling or laboratory error.  Id.  In addition, it is his opinion that the detection of DEHP, radionuclides and arsenic are unlikely to pose a significant health risk based on the concentration levels and

1   infrequency of the substances' detection in the water.  Id.  Although plaintiff claims that the

2   water at DVI caused him to vomit, plaintiff has presented no evidence linking this symptom to

3   the safety of the water quality at DVI.

4           Based upon the evidence before the court on summary judgment, plaintiff's claim

5   also fails as to the second part of the Eighth Amendment analysis.  There is no evidence that

6   defendants have acted with deliberate indifference, or that they were aware of a substantial risk

7   of harm to plaintiff, and that they have disregarded such risk of harm.  Defendants are entitled to

8   summary judgment in their favor with respect to plaintiff's first claim.

9           Plaintiff's second claim is that his Eighth Amendment rights were violated

10  because of the disagreeable and unpleasant appearance, taste and smell of the water at DVI.  The

11  court's expert reported that at various times the water at DVI exceeded the secondary MCLs for

12  iron, manganese, aluminum, chloride, total dissolved solids, and electrical conductivity.  This,

13  according to the court's expert, was likely to cause the water to "taste bad" and "appear cloudy."

14  (Saracino Report (Doc. No. 271), at 14.)  However, as both the court appointed expert reviewing

15  the testing records submitted by the parties and the defendants' expert, Mr. Gaston[11], have

16  explained, the secondary MCLs are not addressed to public health concerns, but instead provide

17  measurements relating only to the appearance and taste of water.

18          In determining what conditions of confinement violate the Eighth Amendment,

19  there is no static test; rather, the Eighth Amendment draws its meaning "from the evolving

20  standards of decency that mark the progress of a maturing society."  Rhodes v. Chapman, 452

21  U.S. 337, 346 (1981) (internal quotations omitted).  Conditions that involve the "wanton and

22  unnecessary infliction of pain," and which "deprive inmates of the minimal civilized measure of

23  life's necessities" violate the Eighth Amendment.  Id. at 347.  Nevertheless, it has been

24  recognized that the Constitution "does not mandate comfortable prisons."  Id. See also Wilson v.

25

26          [11] See Corrections Defendants' Ex. B, Declaration of John M. Gaston, filed February 29,
    2012 (Doc. No. 284-1), at ¶ 3.

1   <u>Seiter</u>, 501 U.S. 294, 298 (1991).  Thus, "[n]ot every unpleasant experience a prisoner might

2   endure while incarcerated constitutes cruel and unusual punishment within the meaning of the

3   Eighth Amendment."  <u>Ivey v. Wilson</u>, 832 F.2d 950, 954 (6th Cir.1987).

4           There is only one Ninth Circuit decision in which the quality of the water

5   provided at a prison has been, at least in part, the basis of a plaintiff's Eighth Amendment claim.

6   In <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996), the plaintiff/prisoner made several

7   allegations concerning the conditions of confinement at Oregon State Prison, including an

8   allegation that the water at the prison was blue/green in color and tasted foul.  The Ninth Circuit

9   determined that the prisoner had produced "sufficient evidence" to make the quality of the water

10  a disputed issue of material fact which could not be resolved on summary judgment.  <u>Id.</u>  In so

11  holding, the court in <u>Keenan</u> stated:  "Food that is spoiled and water that is foul would be

12  inadequate to maintain health."  <u>Id.</u>  Here, however, the court's expert concluded only that the

13  water at DVI was "generally of poor quality with respect to certain secondary standards that

14  govern taste and odor."  (Saracino Report (Doc. No. 271), at 14.)[12]  He did not describe it as

15  being foul or undrinkable and he specifically found that the high iron an manganese content,

16  which were responsible for its taste and occasionally cloudy appearance, did not pose any

17  significant health risk to those using it.  (<u>Id</u>.)

18           In light of the evidence presented by the parties on summary judgment and the

19  court expert's interpretation of the data and testing results set forth in that evidence, the court

20  finds that plaintiff has failed to satisfy the objective test with respect to his Eighth Amendment

21  claim challenging the aesthetics of the water at DVI.  Even if the court were to find that the

22  <u>Keenan</u> court's reference to "foul" water encompassed water that is of  "poor quality" but not

23  dangerous to health, plaintiff's claim would still fail.  Where, as here, there is no evidence that

24

25   [12]  These secondary standards are not enforced by the Environmental Protection Agency
    and are set only to give public water systems guidance on removing chemicals such as iron and
26   manganese to levels that are below what most people will find to be noticeable even though they
    are not health threatening.  <u>See</u> http://www.epa.gov/drink/contaminants/secondarystandards.cfm

the water at DVI presented a substantial risk of harm to plaintiff's health, there can be no finding that defendants were deliberately indifferent to plaintiff's health or safety in violation of the Eighth Amendment.

CONCLUSION

For the foregoing reasons, the Corrections defendants and defendant Spano are entitled to summary judgment in their favor with respect to plaintiff's Eighth Amendment claims against them.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's May 17, 2012 motion for leave to file a late opposition to summary judgment (Doc. No. 292) is granted;

2.  Plaintiff's May 17, 2012 opposition is deemed an opposition to defendant Spano's motion for summary judgment (Doc. No. 283) and an opposition to the Corrections defendants' motion for summary judgment (Doc. No. 284);

3.  Plaintiff's May 29, 2012 motion for an extension of time to file objections to the court's May 9, 2012 findings and recommendations (Doc. No. 293) is granted;

4.  Plaintiff's June 25, 2012 objections are deemed timely filed;

5.  The court's May 9, 2012 findings and recommendations (Doc. No. 291) are vacated; and

IT IS HEREBY RECOMMENDED that:

1.  The February 29, 2012 motion for summary judgment filed on behalf of the San Joaquin County Public Health defendants (Doc. No. 282) be granted;

2.  Defendant Spano's February 29, 2012 motion for summary judgment (Doc. No. 283) be granted; and

3.  The Corrections defendants' February 29, 2012 motion for summary judgment (Doc. No. 284) be granted.

/////

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: August 27, 2012.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
yell1298.msj2

17